IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JAMES BENSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. CIV-23-37-GLJ |
| | ) |
| (1) LINCOLN NATIONAL LIFE INSURANCE | )  **ATTORNEY LIEN CLAIMED** |
|       COMPANY, | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff James Benson, for his cause of action against Defendant Lincoln National Life Insurance Company, alleges and states as follows:

### I. Jurisdiction and Venue

1. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3. Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2) and pursuant to 28 U.S.C. § 11391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II. Parties and Plan

4. Plaintiff is a fifty-eight (58) year-old man.  He resides in Lone Grove, Oklahoma and within this judicial district.

5. At all relevant times, Plaintiff was employed by Michelin North America, Inc.

("Michelin").

6.     Michelin provided long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "Plan").

7.     At all times relevant to his claim, Plaintiff was eligible to participate in the Plan, did participate in the Plan, and was a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

8.     The LTD insurance coverage applicable to Plaintiff through the Plan was pursuant to a group insurance policy, Policy No. GF3-850-291769-01 (the "LTD Policy"). The LTD Policy was issued by Liberty Life Assurance Company of Boston ("Liberty Life") to Michelin.

9.     In or about May 2018, Liberty Life was acquired by Lincoln National Corporation ("LNC").

10.     At some point after LNC acquired Liberty Life, Lincoln Life Assurance Company of Boston ("Lincoln Life") became responsible for the undertakings and legal obligations interposed on Liberty Life by the LTD Policy.

11.     On October 1, 2021, Lincoln Life merged with The Lincoln National Life Insurance Company ("Lincoln National"). As a result of the merger, Lincoln National became responsible for all of Lincoln Life's undertakings and legal obligations owed under the LTD Policy.

12.     Lincoln National is a corporation having its principal place of business in the State of Pennsylvania. At all relevant times, Lincoln National was authorized to sell insurance within the State of Oklahoma, and it transacts business within the State of Oklahoma and within this judicial district.

13.     At all times since LNC's acquisition of Liberty Life and Lincoln Life's merger into Lincoln National, claims for LTD benefits pursuant to the Plan have been administered by Lincoln National. LTD claim benefit determinations are made by Lincoln National and all monies paid on

LTD claims made pursuant to the Plan are paid by Lincoln National.

14. According to the LTD Policy applicable to Plaintiff, the term "disability" means "that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."

15. The term "Any Occupation" means "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

16. "Material and Substantial Duties" under the LTD Policy are the "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

17. The term "reasonable continuity" is not defined in the LTD Policy.

18. The common and ordinary meaning of "continuity" is "uninterrupted duration or continuation." [*See* https://www.merriam-webster.com/dictionary/continuity (last visited January 26, 2023).]

19. Pursuant to the terms of the LTD Policy, the gross monthly disability benefit payable to a disabled Michelin employee in Plaintiff's "eligibility classification" was 60% of Basic Monthly Earnings, not to exceed a Maximum Monthly Benefit of $12,000.00, less Other Income Benefits and Other Income Earnings.

20. For a LTD claimant whose disability began before age 60, the Maximum Benefit Period is to the claimant's 67th birthday.

### III. Allegations Applicable to All Claims

21. Plaintiff began working for Michelin in April 2007.

22. Plaintiff was employed, on a full-time (40-hour per week) basis, as a Boiler

Operator in the Powerhouse department of the Michelin facility in Ardmore, Oklahoma.

23. According to Michelin, Plaintiff's job was a heavy-exertional level occupation. The physical functions of the job, among other things, included lifting up to 50 pounds, and pushing/pulling up to 75 pounds.

24. Plaintiff underwent a left total hip replacement surgery in December 2017.

25. Plaintiff underwent a right total knee replacement surgery in December 2018.

26. After the surgery in December 2018, Plaintiff was no longer able to perform the duties of his heavy-exertional level occupation.

27. At the time Plaintiff ceased working, he was paid $27.71 per hour.

28. Plaintiff made a claim for short term disability ("STD") benefits pursuant to the Plan's STD-related program.

29. The STD claim was administered by the Plan's STD claim administrator at the time, the Reed Group. Upon review of the medical records and information corroborating Plaintiff's unresolved impairments and pain, the Reed Group approved Plaintiff's STD claim for payment for the entirety of the STD period.

30. In May 2019, as the STD claim period end approached, Plaintiff was transitioned into a LTD claim to be administered by Liberty Life.

31. Liberty Life requested and received Plaintiff's updated medical records and information. The records evidenced and confirmed Plaintiff's hip and knee replacement surgeries and ongoing spinal impairments. The records, in pertinent part, evidenced and confirmed Plaintiff's reports of chronic pain.

32. In initially assessing Plaintiff's LTD claim, Liberty Life caused his claim file to be reviewed by an occupational medicine doctor.

33. The review was done by Dr. Oluremi Aliyu, who prepared and submitted a report

to Liberty Life on August 16, 2019.

34.     Dr. Aliyu endorsed that Plaintiff had functional limitations in the use of his right knee and, among other things, opined that from June 20, 2019 and onward, Plaintiff had lift/push/pull restrictions of no more than 20 pounds frequently and 40 pounds occasionally.

35.     In August 2019, because Plaintiff's "heavy exertional level" occupation required lift/push/pull abilities in excess of 40 pounds, Liberty Life approved Plaintiff's LTD claim for payment.

36.     In view of the LTD Policy's benefit rate and Plaintiff's basic monthly earnings, Liberty Life began paying him $2,881.84 per month.

37.     By letter dated March 18, 2020 – even though the change date was 15 months away – Lincoln Life notified Plaintiff about the "any occupation" change-in-disability-definition. Lincoln Life advised it would be gathering information to assess Plaintiff's eligibility for LTD benefits beyond June 19, 2021.

38.     In March and April 2020, Lincoln Life requested and received medical records from Plaintiff's various healthcare providers. The records evidenced and confirmed Plaintiff's unresolved spine, hip, and knee impairments and related pain.

39.     The records received by Lincoln Life in March and April 2020 also evidenced and confirmed Plaintiff's bilateral shoulder impairments and related pain.

40.     By letters dated October 28, 2020 and November 4, 2020, Lincoln Life advised Plaintiff it was continuing to evaluate his entitlement to benefits under the any-occupation definition and that it was requesting updated medical records from his various healthcare providers.

41.     The records subsequently received by Lincoln Life evidenced and confirmed: (1) chronic pain following left total hip arthroplasty; (2) lumbar radiculopathy; and (3) chronic pain

following right total knee arthroplasty. The records evidenced and confirmed Plaintiff's unresolved left hip and right knee impairments and related pain. The updated records confirmed Plaintiff's ongoing treatment for bilateral shoulder impairments, pain, and possible total shoulder arthroplasty surgeries.

42. In early December 2020, Plaintiff notified Lincoln Life that his claim for Social Security Disability Income ("SSDI") benefits was approved. He also provided the Social Security Administration's Notice of Award and Decision to Lincoln Life.

43. The Notice of Decision reflects the Social Security Administration's finding that, in view of Plaintiff's residual functional capacity, age, education, and work experience, there were no jobs in the national economy he could perform after December 31, 2019.

44. Lincoln Life requested to receive another file review opinion from an occupational medicine doctor in December 2020.

45. The file review was done by Dr. Matthew Chan, who prepared a report dated December 22, 2020.

46. As set out in his report, Dr. Chan opined about Plaintiff's exertional/postural abilities, as follows:

- Sitting: Unrestricted
- Standing: Occasionally, up to 15 minutes at a time, up to 2 hours total per day
- Walking: Occasionally, up to 10 minutes at a time, up to 2 hours total per day
- Lifting: Occasionally up to 10 lbs., frequently up to 5 lbs.
- Carrying: Occasionally up to 10 lbs., frequently up to 5 lbs.
- Pushing: Occasionally up to 10 lbs., frequently up to 5 lbs.
- Pulling: Occasionally up to 10 lbs., frequently up to 5 lbs.
- Climbing stairs: Occasionally
- Stooping: Occasionally
- Kneeling: Occasionally
- Crouching: Occasionally
- Reaching: Occasionally all levels with bilateral upper extremities ("BUE")

- Using lower extremities for foot controls: Occasionally bilateral lower extremities ("BLE")
- Fine manipulation: Constantly BUE
- Simple and firm grasping: Constantly BUE

47. Dr. Chan never examined or treated Plaintiff. Dr. Chan never observed Plaintiff in a clinical setting.

48. Nevertheless, based on Dr. Chan's review and opinion, Lincoln Life notified Plaintiff, by letter dated January 11, 2021 that it would stop paying LTD benefits after June 19, 2021.

49. On December 6, 2021, Plaintiff appealed Lincoln Life's decision to stop paying benefits after June 19, 2021.

50. For his appeal, Plaintiff called out the material flaws and shortcomings in Dr. Chan's review. For example, Dr. Chan incorrectly assessed Plaintiff as having a single impairment –"Unilateral primary osteoarthritis, right knee" – when, in fact, the medical records confirmed the following multiple and severe impairments: (1) failed right total knee replacement with failure of bony ingrowth tibial implant; (2) thoracic degenerative disc disease; (3) thoracic spinal stenosis (4) multilevel degenerative disc disease of the lumbar spine with facet arthropathy causing significant stenosis at L5-S1; (5) moderate to severe right shoulder glenohumeral degenerative joint disease with degenerative tearing; (6) moderate left shoulder glenohumeral degenerative joint disease with degenerative tearing and mild to moderate left shoulder acromioclavicular joint arthritis; (7) chronic unresolved right knee, left hip, back, and bilateral shoulder pain; and (8) bilateral pain, numbness, and tingling radiating to his lower extremities and feet.

51. Further, Dr. Chan's assessments made in December 2020 were immaterial to whether Plaintiff might, six months into the future, be able to sustain work activities.

52. For his appeal, Plaintiff additionally called out the flaws and shortcomings in a

"transferable skills analysis" ("TSA") done by a Lincoln Life vocational employee on January 10, 2021.

53. The TSA was based on the out-of-date occupational information in the *Dictionary of Occupational Titles* ("DOT") and did not consider the more current and reliable occupational data from *The Occupational Information Network* ("O*NET").

54. Pursuant to the O*NET information provided by Plaintiff on appeal, the Deposit Clerk occupation identified by Lincoln Life in its TSA required substantial technology skills and interposed a "dependability" requirement.

55. Pursuant to the O*NET occupational information Plaintiff provided on appeal, he was not qualified for, nor able to perform, the material and substantial duties of the Deposit Clerk occupation.

56. Plaintiff also submitted additional medical records and information on appeal. Those records confirmed his ongoing and unresolved failed right total knee replacement issues, unresolved spinal impairments, and related pain.

57. Plaintiff's appeal submission included the opinions of two treating healthcare providers from Precision Spine Care.

58. In November 2021, Plaintiff's two Precision Spine Care healthcare providers opined that he "*is really not able to do any prolonged activity sitting or standing for really more than 30 minutes at a time without having to change positions due to a significant increase in pain*" and "*it would be very difficult for Mr. Benson to return to any sort of gainful long-term employment.*"

59. One day after Plaintiff appealed, on December 7, 2021, Lincoln National reinstated his LTD claim and resumed paying benefits.

60. By its letter dated December 7, 2021, Lincoln National advised Plaintiff that based

on "the medical and vocational information in your claim file, we have determined that you have qualified for continued benefits."

61. Lincoln National changed its mind three and a half months later. By letter dated March 31, 2022, Lincoln National notified Plaintiff it was, again, denying any further payment of LTD benefits.

62. By its letter dated March 31, 2022, Lincoln National contended Plaintiff could "perform, with reasonable continuity, the material and substantial duties" of several sedentary level occupations.

63. Lincoln National's claim denial was based on a file-review done by Dr. Annie Layno-Moses on March 22, 2022 and a related TSA done by a Lincoln National vocational employee on March 30, 2022.

64. Dr. Layno-Moses never examined or treated Plaintiff. Dr. Layno-Moses never observed Plaintiff in a clinical setting.

65. The file review and TSA were each, in their own way, materially flawed and not substantial evidence supporting the denial of Plaintiff's LTD claim.

66. Plaintiff appealed Lincoln National's adverse claim decision by letter dated September 21, 2022.

67. Plaintiff's appeal included records that evidenced and confirmed ongoing and unresolved bilateral wrist pain and tenderness as of February 2022.

68. Plaintiff's appeal included records from April 2022, which evidenced and confirmed his left shoulder impaired range of motion and strength loss. The records confirmed left shoulder-related pain management treatment in the form of a diagnostic injection of 8cc of 1% plain lidocaine.

69. Plaintiff submitted on appeal a MRI Arthrogram of the left shoulder done on April

19, 2022. The MRI confirmed: (1) supraspinatus tendinosis and partial tear, surface fraying and thinning of the tendon; (2) severe glenohumeral chondrosis, associated degenerative labral tear; and (3) severe acromioclavicular osteoarthritis.

70. The records provided by Plaintiff on appeal confirmed that his treating orthopedic surgeon had recommended left shoulder surgery.

71. Plaintiff's appeal included records evidencing that, by July 2022, his left shoulder impaired range of motion and weakness had not improved. The records confirmed Plaintiff's left shoulder had become "progressively more painful."

72. Plaintiff's appeal submission confirmed he underwent the recommended left shoulder surgery on August 8, 2022 because, as noted in the pre-operative report, Plaintiff's arthritis could not be stopped, but its progression might be slowed by the surgery.

73. The post-surgery physical therapy records were provided by Plaintiff in support of his appeal. Those records, to the time Plaintiff commenced his appeal on September 21, 2022, evidenced and confirmed Plaintiff's impaired left shoulder functionality.

74. In appealing Lincoln National's claim denial, Plaintiff also criticized its reliance on Dr. Layno-Moses's file review.

75. In particular, Dr. Layno-Moses's assertion that Plaintiff's abilities, as she assessed them, were sustainable on a full-time basis was pure conclusion and not supported by the competent medical evidence, all of which confirmed Plaintiff's chronic pain was made worse by activity and/or by prolonged sitting.

76. As may be seen upon review of her report, Dr. Layno-Moses did not acknowledge or discuss the inevitable negative effects of Plaintiff's chronic pain on his work attendance and performance.

77. In appealing Lincoln National's claim denial, Plaintiff also criticized the TSA relied

upon by Lincoln National to deny his claim.

78. The TSA done on March 30, 2022 failed to acknowledge or consider the substantial "technology" skills needed to perform the three occupations identified in the TSA.

79. The TSA done on March 30, 2022 failed to acknowledge or consider the "dependability" requirement interposed in each of the three occupations Lincoln National asserted Plaintiff could perform.

80. On September 26, 2022, Plaintiff submitted additional information and records to Lincoln National in support of his entitlement to LTD benefits after March 30, 2022.

81. Plaintiff's additional submission included Electromyography ("EMG") testing and a nerve conduction study ("NCS") done in July 2022 by Plaintiff's treating Physical Medicine and Rehabilitation ("PM&R") physician, Dr. Moeid Khan.

82. The EMG testing and NCS study confirmed a chronic right sensorimotor median neuropathy, likely at or about Plaintiff's wrist.

83. Plaintiff is right-handed.

84. In response to Plaintiff's appeal, Lincoln National requested another file review be done.

85. Dr. Andrew Nava conducted the appeal-related file review and prepared a report on October 10, 2022.

86. Dr. Nava identified Plaintiff's primary impairing diagnoses as: (1) left shoulder impingement; (2) acromioclavicular joint arthrosis; (3) rotator cuff tear; and (4) stage I glenohumeral arthritis with loose body.

87. Dr. Nava acknowledged Plaintiff had comorbid diagnoses that were significant to impairment and identified those as: (1) spinal stenosis, lumbar region with neurogenic claudication; (2) chronic pain syndrome; (3) lumbosacral spondylosis without myelopathy; (4)

myalgia unspecified site; and (5) other chronic pain.

    88. As set out in Dr. Nava's report, he opined as follows about Plaintiff's impairments:

> Based on the documentation provided, there is objective evidence to support an impairment for this claimant from beyond March 30, 2022 as there are abnormal objective examination findings pertaining to the left shoulder, including postoperative status, pain, tenderness, decreased range of motion and weakness; and abnormal findings pertaining to the lumbar spine, including pain, weakness, and tenderness.

    89. Dr. Nava opined about Plaintiff's exertional/postural abilities, as follows:

- Standing – no longer than 15 minutes at a time over 2 hours; no more than one hour in an 8 hour work day
- Walking – no longer than 15 minutes at a time over 2 hours; no more than one hour in an 8 hour work day
- Sit – unrestricted or unlimited, but noting changing positions as necessary for comfort
- Push – left upper extremity never, right upper extremity 10 pounds occasionally
- Pull – left upper extremity never, right upper extremity 10 pounds occasionally
- Lift – left upper extremity never, right upper extremity 10 pounds occasionally
- Carry – left upper extremity never, right upper extremity 10 pounds occasionally
- Bend – occasionally
- Stoop – occasionally
- Kneel – occasionally
- Climbing – Never ladders, occasionally stairs
- Left Upper Extremity – Occasional keyboarding, mousing, typing. No forceful gripping or grasping. No overhead. Occasional waist and below desk reaching
- Right Upper Extremity – no restrictions

    90. Dr. Nava opined that "the claimant can work 8 hours per day with the above restrictions," but did not address whether Plaintiff could do so for an uninterrupted duration, i.e., over the course of a workweek or month.

    91. Dr. Nava did not address or discuss whether Plaintiff's undisputed chronic pain might cause absences from work or decrements to work performance.

92. Dr. Nava made the above-noted assessment about Plaintiff purportedly having "no restrictions" with the use of his right upper extremity notwithstanding the abnormal EMG/NCS study results.

93. As it happens, Dr. Nava did not note or discuss Plaintiff's chronic right sensorimotor median neuropathy in his report.

94. After Lincoln National received Dr. Nava's report, it requested that a TSA be done based on Dr. Nava's assessments.

95. The TSA was done on October 17, 2022 by a Lincoln National-employed vocational employee. The vocational employee concluded Plaintiff was able to perform the duties of two sedentary occupations, Surveillance System Monitor (DOT Code 379.367-010), and Information Clerk (DOT Code 237.367-022).

96. The TSA done on October 17, 2022 did not address whether Plaintiff could perform the duties of the two occupations identified for an uninterrupted duration, i.e., over the course of a workweek or month.

97. Further, the referenced TSA was materially flawed because it was done with the physical demand of "reaching" inaccurately set to "Constantly."

98. As may be seen in the TSA, the vocational employee professed to adjust variables in Plaintiff's profile consistent with Dr. Nava's opinion, but the variable of "reaching" was not done per Dr. Nava's opinions of "*No overhead*" reaching and "*Occasional waist and below desk reaching*."

99. By letter dated November 4, 2022, Plaintiff complained to Lincoln National that Dr. Nava's report was materially flawed because of his failure to acknowledge and discuss the abnormal EMG/NCS study result.

100. Plaintiff also complained about the flawed TSA done as related to "reaching."

101. By letter dated December 8, 2022, Lincoln National notified Plaintiff that his LTD claim appeal was denied.

102. As indicated in its appeal denial letter, Lincoln National wrongly contended, among other things, that Plaintiff had no right upper extremity limitations. Lincoln National further contended that Plaintiff, with his purportedly one good extremity, was able to do the duties of the two occupations identified by the Lincoln National vocational employee.

103. In reaching its adverse claim decision and during the course of its investigation leading to the same, Lincoln National failed to apply the terms of the Plan and LTD Policy.

104. In reaching its adverse claim decision and during the course of its investigation leading to the same, Lincoln National mischaracterized record information, cherry-picked information which might lend support to a claim denial while de-emphasizing or disregarding record information supportive of Plaintiff's LTD claim, unreasonably relied on the opinions of file-reviewing physicians who never observed or examined the Plaintiff, unreasonably relied on the flawed reviews done by the file-reviewing physicians, and unreasonably relied on the flawed TSAs done on Plaintiff's claim.

105. Plaintiff has exhausted his administrative remedies under the Plan.

### IV.   Statement of Claim

#### First Claim

#### ERISA - Improper Denial of Benefits

106. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 105 of this Complaint as though set forth at length herein and further alleges:

107. At all relevant times, the terms of the Plan required payment of LTD benefits to Plaintiff due to his debilitating impairments.

108. Lincoln National's failure to pay LTD benefits to Plaintiff after March 30, 2022 is

contrary to the terms of the Plan, and is wrong, unreasonable and not supported by the substantial record evidence.

109. Plaintiff seeks a declaration from this Court that he is entitled to the LTD benefits due him under the terms of the Plan.

110. Alternatively, Plaintiff seeks a declaration from this Court that Lincoln National's claim decision is not the product of a full, fair, and principled review (and a related Order reinstating his LTD claim and remanding the matter to Lincoln National for a full, fair, and principled review).

111. By reason of Lincoln National's erroneous, wrong, and/or unprincipled claim decision, Plaintiff has been forced to retain an attorney to secure disability benefits due him under the terms of the Plan, for which Plaintiff has and will incur attorney fees and costs.

112. Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff James Benson demands judgment against Defendant Lincoln National Life Insurance Company:

(1) for a declaration that Defendant wrongfully, erroneously, and/or unreasonably denied his claim for LTD benefit after March 30, 2022, and that he is entitled to receive the amount of benefits due under the terms of the Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2) for a declaration that all future LTD benefits (and related other Plan benefits, if any) be paid or maintained pursuant to the terms of the Plan; and/or

(3) for a declaration that Defendant denied Plaintiff a full and fair review, and that as a consequence thereof, his LTD claim should be reinstated and remanded for further claims procedures;

(4) for the costs of this action and Plaintiff's attorney fees, pursuant to 29 U.S.C. §1132(g); and

(5) for such other and further relief as may be deemed just and proper by the Court.

**Respectfully submitted,**

**SHOOK & JOHNSON, P.L.L.C.**

By: **s/ Jonathan E. Shook**
**Jonathan E. Shook, OBA #17343**
**7420 S. Yale Ave.**
**Tulsa, OK 74136**
**(918) 293-1122 -** *Telephone*
**(918) 293-1133 -** *Facsimile*
**jshook@shookjohnson.com**

**ATTORNEY FOR PLAINTIFF**